MASON et al. v. WASHINGTON–BUTTE MINING CO.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1914.)

No. 2323.

1. MINES AND MINERALS (§ 43*)—PLACER CLAIM—PATENT—EFFECT.

A patent to a placer claim passed to the grantee all mineral within the claim including veins or lodes not known to exist at the time of the application for the patent, so that, by introducing the patent in a suit to quiet title, complainant established prima facie title to all land contained within the boundaries described and all ores and minerals lying therein.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 125–129; Dec. Dig. § 43.*]

2. MINES AND MINERALS (§ 17*)—"DISCOVERY."

The term "discovery," as applied to mining claims, means the acquirement of knowledge that a vein or lode exists within the limits of the claim, and, while it is not necessary that pay ore be found in order to make a valid discovery, it is necessary that the indications be such that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

miners in the district would follow them in the expectation of finding ore, which would justify them in working the claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 24–28; Dec. Dig. § 17.*

For other definitions, see Words and Phrases, vol. 3, pp. 2093–2095; vol. 8, p. 7638.]

3. MINES AND MINERALS (§ 41*)—ADVERSE CLAIMS—JUDGMENT—CONCLUSIVE-NESS.

Where placer claimants entered a protest and adverse claim to mining ground in controversy, and the proceeding was duly prosecuted and resulted in judgment in favor of such claimants, a copy of which was filed in the land office, and a patent issued, the judgment was conclusive as between the parties and their successors in interest that the lode location previously made was not a valid subsisting location sufficient to segregate the land covered thereby from the public domain and to exclude the same from the ground covered by the placer claim as described in the application for the patent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 116–119; Dec. Dig. § 41.*

Conclusiveness of patent for mining claim, see notes to Carson City Gold & Silver Mining Co. v. North Star Mining Co., 28 C. C. A. 346; Bunker Hill & S. Mining & Concentrating Co. v. Empire State-Idaho Mining & Developing Co., 48 C. C. A. 674.]

4. MINES AND MINERALS (§ 41*)—ADVERSE CLAIMS—PLACER LOCATION—LODES—JUDGMENT—CONCLUSIVENESS.

A judgment, in an adverse suit in favor of placer claimants as against prior lode locations, was not effective to determine that there were not, within the ground covered by the placer claim, veins or lodes known to exist at the time of the application for the placer patent, and hence the judgment had no bearing on the question of the validity of subsequent locations the rights whereof depended on whether, at the time the placer patent was applied for, there were known veins or lodes such as could be excluded from the grant.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 116–119; Dec. Dig. § 41.*]

5. MINES AND MINERALS (§ 43*)—PLACER LOCATIONS—PATENTS—VEINS OR LODES—EXCLUSION.

In order to establish exclusion of veins or lodes from a grant of land included in a placer patent, it is not sufficient to show that the land in fact contained valuable minerals, but it must also be shown that at the time of the application for the patent it was known to the applicant, or in the community generally, or that a reasonable and fair inspection of the premises would have disclosed rock in place bearing minerals of such extent and value as would justify expenditure to extract them.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 125–129; Dec. Dig. § 43.*]

Appeal from the District Court of the United States for the District of Montana; Frank S. Dietrich, Judge.

Suit by the Washington-Butte Mining Company against Louis Mason and others. Decree for complainant, and defendants appeal. Affirmed.

The appellants herein were the defendants in the court below in a suit brought by the appellee to quiet its title to a portion of what is known as the Butte & Boston placer mining claim. In its bill the appellee alleged that the appellants' claim of estate or interest in said land was without right and in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

valid. The appellants answered, alleging that, prior to the location of the placer claim, two certain lode claims, the Point Pleasant and the Pleasant View, had been located, covering a portion of the ground in controversy; that, at the date of the application for the patent to the placer claim, certain lodes, veins, or deposits of mineral ore or rock in place carrying valuable minerals were known to exist within the boundaries thereof, or by reasonable diligence should have been known to the applicants for the patent; that the application did not include any application for such veins or lodes, and for that reason the same were excluded and excepted out of the land patented; and that thereafter, and about ten years after the date of the placer location, certain quartz lode claims were located on such veins or lodes, to wit, the Hornet, the Gulf, the Olivia, the Hope, and the Rabbit. Upon the issues and the testimony, the court found for the appellee, and entered a decree quieting its title to that portion of the placer claim which was described in the bill.

Certain salient facts disclosed in the evidence are the following: On April 1, 1890, the Pleasant View and the Point Pleasant quartz claims were located, covering a portion of the land in controversy, and a year later, Louis Mason, one of the appellants herein, acquired an interest in said claims. On December 20, 1890, the placer claims now known as the Butte & Boston placer claim were located, covering a portion of the ground included in the Point Pleasant and Pleasant View quartz lode locations. On May 11, 1891, an application was made for patent for the placer claim, but patent was not issued until December 19, 1895. In the meantime, the owners of the two quartz claims commenced an adverse suit, and in March, 1895, the contest was compromised, the quartz claimants permitted the placer applicants to take judgment and to go to patent in consideration of the latter conveying to the former the east ten acres, which was about one-third of the ground included within the placer application. Deeds were exchanged, whereby the lode claimants conveyed to the placer claimants the west two-thirds of the placer claim, and they in turn conveyed the east ten acres to the lode claimants. The Gulf, Rabbit, Hope, Olivia, and Hornet quartz claims were located in 1900, and the appellants subsequently acquired the interest of the locators thereof.

Walsh, Nolan & Scallon, of Helena, Mont., and J. A. Poore, of Butte, Mont., for appellants.

John A. Shelton, of Butte, Mont., for appellee.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The patent to the placer claim conveyed to the appellee's grantors all mineral within the claim, including veins or lodes not known to exist at the time of the application therefor (Sullivan v. Iron Silver Min. Co., 143 U. S. 431, 12 Sup. Ct. 555, 36 L. Ed. 214), and, by introducing the patent in evidence, the appellee established, prima facie, title to all the land described therein and all ores and minerals lying within the boundaries thereof (Iron Silver Min. Co. v. Mike & Starr Gold & Silver Min. Co., 143 U. S. 394–401, 12 Sup. Ct. 543, 36 L. Ed. 201). But the appellants contend: First, that the placer location was void as to that portion thereof which was included within the Point Pleasant and Pleasant View quartz locations, and that the ground covered thereby remained public domain, subject to entry at the time of the location of the Gulf, Rabbit, Hope, Olivia, and Hornet lode claims; second, that at the time of the application for the placer patent there were known lodes and veins upon the ground, which, for the reason that they were known to the placer applicants, were excepted from

the placer patent so that they became subject to entry by the lode locations which were made in 1900.

[2] The discovery shaft of the Pleasant View claim was within the boundaries of the land in controversy, but it is conceded by the appellants that there was no discovery sufficient to validate the location. The discovery shaft of the Point Pleasant claim was at the eastern end of that claim, and outside of the ground in controversy. We agree with the court below that it is extremely doubtful whether the evidence is sufficient to show that any sufficient discovery was made thereon prior to the application for the placer patent. The ground in controversy is land that has been filled by erosion and débris from the mountain above it, and the depth of the material so deposited increases with the distance from the mountain, so that at the western end it is several hundred feet in depth. In the material so deposited are rock and boulders, together with fragments of mineral bearing rock, and, while it is shown that shafts were sunk on the lode claims during the time referred to, there is no satisfactory evidence that a vein, lode, or lead in place containing one or more of the minerals mentioned in the statute was found. Discovery means the acquirement of knowledge that such a vein or lode exists within the limits of the claim. Waterloo Min. Co. v. Doe (C. C.) 56 Fed. 685. And while it is not necessary that pay ore be found in order to make a valid discovery, it is necessary that the indications be of such a character that miners in that district would follow them in the expectation of finding ore, such as would justify them in working a claim for that purpose. Shoshone Min. Co. v. Rutter, 87 Fed. 801, 31 C. C. A. 223.

We are of the opinion, also, that both the lode locations were rendered void ab initio so far as they included any of the land in controversy by the judgment in the adverse proceedings. Section 2326 of the Revised Statutes (U. S. Comp. St. 1901, p. 1430), under which the adverse proceeding was had, requires the adverse claimant to commence proceedings in a court of competent jurisdiction to determine the question of the right of possession, and declares that his failure to do so shall be a waiver of his adverse claim, and that after judgment the whole proceeding and the judgment shall be certified by the register to the Commissioner of the General Land Office, and the statute provides that a patent shall issue thereon for the claim "or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess." There is no question here involving the doctrine established by Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, Noyes v. Mantle, 127 U. S. 348, 8 Sup. Ct. 1132, 32 L. Ed. 168, Brown v. Gurney, 201 U. S. 184, 26 Sup. Ct. 509, 50 L. Ed. 717, and Farrell v. Lockhart, 210 U. S. 142, 28 Sup. Ct. 681, 52 L. Ed. 994, 16 L. R. A. (N. S.) 162, to the effect that mineral ground covered by a valid location is, during the life of the location, segregated and not open to location by another, and that, until a location is terminated by abandonment or forfeiture, no right or claim to the property can be acquired by an adverse entry thereon, with a view to the relocation of the same. In Duffield v. San Francisco Chemical Co., 205 Fed. 480, 123 C. C. A. 548, we said:

"By these statutes there was relegated to a court the jurisdiction to determine the right of possession between the adverse claimants. The determination of that question necessarily involves, not only the question which of the adverse claimants was prior in time in making location, and whether the location was made in compliance with the law, but also the question whether the land occupied and covered by the location was subject to location in the manner in which it was attempted to be acquired."

In Iron Silver Min. Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, 34 L. Ed. 155, the court said that the result of the judicial investigation "shall govern the action of the officers of the Land Department in determining which of these claimants shall have the patent, the final evidence of title, from the government."

And in Mining Co. v. Tunnel Co., 196 U. S. 337, 357, 25 Sup. Ct. 266, 275 (49 L. Ed. 501), the court said that the decision of a conflict between two mining claimants is "a decision which will enable the Land Department without further investigation to issue a patent for the land."

[3] In the case at bar the protest and adverse claim and adverse suit of the locators were duly filed and commenced, such proceedings were had therein that judgment in favor of the placer applicants was entered and a certified copy thereof was filed in the Land Office, and on December 19, 1895, patent was issued to the applicants for the placer patent, the predecessors in interest of the appellee. The effect of the judgment in those proceedings was to establish as between the parties thereto that the lode location was not a valid subsisting location such as was efficient to segregate the land covered thereby from the public lands of the United States, and to exclude the same from the land covered by the placer claim and described in the application for patent therefor. It may be admitted, however, that the government was not bound by the adjudication further than it has declared that it will accept such a judgment as conclusive of the right of possession as between contending claimants. And the judgment went no further than to end the contest between the adverse parties, and determine the right of possession, leaving the applicant to make the proof required by law to entitled him to a patent. Branagan v. Dulaney, 2 Land Dec. Dept. Int. 744; Alice Placer Mine, 4 Land Dec. Dept. Int. 314; Perego v. Dodge, 163 U. S. 168, 16 Sup. Ct. 971, 41 L. Ed. 113.

[4] It had not the effect to determine that there were not, within the ground covered by the placer claim, veins or lodes known to exist at the time of the application for the patent, and it has no bearing upon the question of the validity of subsequent locations, the rights whereof depend on the question whether, at the time when the placer patent was applied for, there were known veins and lodes such as to be excluded from the grant of the patent.

The question remains whether, at the time of the application for the placer patent, there were known veins or lodes within the ground described in the application for patent so that, by operation of law, they were excluded from the patent. In United States v. Iron Silver Min. Co. 128 U. S. 673, 683, 9 Sup. Ct. 195, 199 (32 L. Ed. 571), which was a suit brought by the United States to set aside placer patents on the ground that the patented tracts were not placer mining ground but

land containing mineral veins or lodes of great value "as was well known to the patentee on his application for the patents," the court held that it was not enough that there might have been some indications of outcroppings on the surface, or of the existence of lodes or veins of rock in place bearing gold or silver or other metal, to justify their designation as known veins or lodes. "To meet that designation, the lodes or veins must be clearly ascertained to be of such extent as to render the land more valuable on that account and justify their exploitation, and evidence of a vein which might be sufficient to sustain a lode location as against a conflicting placer claim is not sufficient to establish the existence of a known vein or lode within the meaning of the statute." The doctrine of the decision in that case and the language we have quoted therefrom were approved in Chrisman v. Miller, 196 U. S. 313, 321, 25 Sup. Ct. 468, 49 L. Ed. 770.

[5] The conclusion to be drawn from these decisions is that, before it can be held that veins or lodes are excluded from the grant of land included in a placer patent, it is not sufficient to show that the land does in fact contain valuable minerals, but it must be shown that, at the time of the application for patent, more has been discovered than the indications of mineral which would ordinarily sustain a lode location, and that it was at that time "known to the applicant for the placer patent, or known to the community generally, or else disclosed by workings and obvious to any one making a reasonable and fair inspection of the premises, for the purpose of obtaining title from the government" (Iron Silver Co. v. Mike & Starr Co., 143 U. S. 394, 402, 12 Sup. Ct. 543, 545 [36 L. Ed. 201]), that there was rock in place bearing minerals of such extent and value as would justify expenditures for the purpose of extracting them. In the case last cited, it was said:

"It is undoubtedly true that not every crevice in the rocks, nor every outcropping on the surface, which suggests the possibility of mineral, or which may, on subsequent exploration, be found to develop ore of great value, can be adjudged a known vein or lode within the meaning of the statute."

The evidence is convincing that, within these definitions, no vein or lode had been discovered in any of the shafts that had been sunk on the ground in controversy in this suit, prior to the date of the application for the patent. Nor was there any outcropping of a vein or lode on the surface of the ground nor any mineral-bearing vein in the surrounding country which might be traced to run in that direction.

The decree is affirmed.